# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

CYNTHIA R. JARVIS,

                        **Plaintiff,**

-vs-                                        **Case No. 6:08-cv-138-Orl-19KRS**

MICHAEL D. GRIFFIN,

                        **Defendant.**

_____

## ORDER

This matter comes before the Court on the following:

1.    Motion for Summary Judgment and Memorandum of Law in Support by Defendant Michael D. Griffin (Doc. No. 53, filed June 23, 2009);

2.    Motion to Dismiss for Lack of Subject Matter Jurisdiction and Memorandum of Law in Support by Michael D. Griffin (Doc. No. 59, filed Aug. 6, 2009);

3.    Notice of Voluntary Dismissal of Plaintiff's Claim under the Whistleblower Protection Act (Count III) by Cynthia R. Jarvis (Doc. No. 60, filed Aug. 10, 2009); and

4.    Response in Opposition to Defendant's Motion for Summary Judgment by Cynthia R. Jarvis (Doc. No. 61, filed Aug. 10, 2009).

## Background

Plaintiff Cynthia R. Jarvis brings this action against Defendant Michael D. Griffin, Administrator of the National Aeronautics and Space Administration ("NASA"), seeking relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), the Whistleblower Protection

Act, 5 U.S.C. § 2303, the Fair Labor Standards Act, 29 U.S.C. § 201, and the Back Pay Act, 5 U.S.C. § 5596. NASA now moves for summary judgment. (Doc. No. 53.)

Cynthia Jarvis is an employee of NASA and has worked at the Kennedy Space Center ("KSC") in Brevard County, Florida for twenty-nine years.[1] (Doc. No. 1 ¶¶ 3, 10.) Jarvis contends that while working at KSC, she was treated differently from similarly situated male employees, subjected to a hostile workplace, faced with retaliation after bringing an employment discrimination charge against NASA, and was required to work overtime without compensation. (Doc. No. 29 ¶¶ 13, 14, 34, filed Jan. 31, 2008.) Jarvis further alleges that NASA management repeatedly requested that she violate federal regulations and retaliated against her when she refused to comply. (*Id.* ¶ 25.)

Jarvis is officially classified by NASA as a GS-13 employee and Fair Labor Standard Act ("FLSA") exempt. (Doc. No. 53-22.) Jarvis has not previously sought to have her position reclassified as non-exempt. (Jarvis Dep. at 199, 202-04.) Since May of 2007, Jarvis has held four titles at KSC, including Industrial Property Officer, Property Administrator, Lead of the Industrial Property Office, and Industrial Property Management Specialist. (*Id.* at 22.) As Industrial Property Management Specialist, Jarvis conducts day-to-day property administration work. (*Id.* at 22-24.) As Property Administrator, Jarvis audits contractors, signs transfers and relieves contractors of liability related to the destruction of government property. (*Id.* at 24, 25.) As Industrial Property Officer, Jarvis serves as the "focal point for any and all transactions" involving contractor-accountable government property at KSC and is also involved in the planning of such

_____

[1] These facts are recited for contextual purposes and are set forth in the light most favorable to the Plaintiff.

contracts. (*Id.* at 25, 26.) As Lead Industrial Property Officer, Jarvis is in charge of supervising a trainee and offers advice to various parties regarding compliance with a number of federal regulations. (*Id.* at 26-28.)

Jarvis maintains that she was assigned more work than could be completed in a forty-hour work week and therefore requested permission to work overtime.[2] (Jarvis Dep. at 197.) Jarvis never indicated her overtime hours on her timecard or received permission to work the requested overtime. (*Id.*) In September of 2007, Jarvis sent an email to her superiors stating that she had been informed that it was against federal regulations to work at home without compensation, that she had in fact been working at home without compensation, and that she would therefore be "working additional flex time and comp time hours at the office and requesting approval for telework." (Doc. No. 53-22.) Jarvis maintains that her request for paid leave was denied and she was instead placed on Absent Without Leave and Leave Without Pay status in retaliation for sending the September 2007 email. (Doc. No. 29 ¶ 51.)

In 2005, Jarvis filed a formal complaint with the Equal Employment Opportunity Commission (EEOC) alleging gender discrimination and retaliation arising out of NASA's failure to promote Jarvis to the position of Industrial Property Management Specialist. (Doc. No. 53-24.) The EEOC found that Jarvis had been the "superior applicant for the position" and was denied the promotion in part due to discrimination on the basis of her sex and retaliation for her participation

---

[2]Both parties have provided copies of the Jarvis deposition as exhibits. NASA filed an abridged version, while Jarvis filed the full version. (Doc. No. 54-10; Doc. No. 62.) For the sake of clarity, the Court will cite to the deposition as "Jarvis Dep." To avoid citing two different documents, the Court will refer to the page number of the original transcript rather than the page numbers that CM/ECF has assigned to the various submitted exhibits.

in prior protected Equal Employment Opportunity (EEO) activity.[3]  (*Id.*)  The EEOC ordered

NASA to retroactively promote Jarvis to the position of Industrial Property Management

Specialist, to award back pay and other benefits, and to provide Jarvis with compensation for

reasonable attorney's fees and costs.  (*Id.*)  This decision was affirmed by the EEOC on appeal.

(*Id.*)  Jarvis subsequently filed a petition to enforce NASA's compliance with the EEOC order.

(Doc. No. 31 ¶ 25; Doc. No. 53-25.)   Jarvis maintains that, to date, NASA has failed to reinstate

her sick and annual leave, correct contributions to her thrift savings plan, and provide interest on

her back pay.  (Doc. No. 63.)

Jarvis filed the formal complaints underlying the present litigation with NASA

headquarters in November and December of 2007.  (Doc. No. 53-2.)  As discussed above, Jarvis

had previously filed discrimination complaints against NASA in both 2004 and 2005.  (Jarvis Dep.

at 182, 183.)  Prior to filing the 2004 and 2005 complaints, Jarvis discussed her concerns with a

NASA employee designated as a "Collateral Duty Counselor," who provided Jarvis with Equal

Employment Opportunity (EEO) counseling.[4]  (*Id.*)  Before filing the complaints at issue in this

case, however, Jarvis did not similarly engage in a discussion with a NASA employee holding the

title of Collateral Duty Counselor or any other employee certified to provide EEO counseling, a

fact reflected by Jarvis in the formal complaints she filed with NASA headquarters.  (Jarvis Dep.

at 181-184; Doc. No. 53-2.)

_____

[3] Jarvis previously filed an informal complaint with the EEOC regarding lewd emails distributed by her then supervisor.  (Doc. No. 53-24.)

[4]Equal Employment Opportunity (EEO) counseling is provided by NASA in an effort to resolve disputes at an informal level.  (Doc. No. 53-5)

In her affidavit, Jarvis asserts that she did not initiate contact with an Equal Opportunity (EO) counselor because a former Collateral Duty Counselor informed her that KSC no longer had EO counselors.[5] (Jarvis Dep. at 183.) However, prior to filing the formal complaints with NASA headquarters, Jarvis did send an email to Tara Gillman, Manager of the Office of Diversity and Equal Opportunity, as well as her supervisors, and the KSC Ombudsman. (Doc. No. 53-14.) In her email, Jarvis maintained that she was repeatedly requested to violate federal regulations. (*Id.*) She also stated that she was subjected to retaliation for her refusal to comply with these requests, and demanded "that such retaliation immediately cease." (*Id.*) Jarvis claims that this email was sent as an attempt to initiate the pre-complaint process. (Jarvis Dep. at 175, 178.) In her reply email, Gillman instructed Jarvis to contact the Equal Opportunity Specialist or KSC's Discrimination Complaint Manager if she wished to initiate a claim of retaliation. (Doc. No. 53-14.) Both the Equal Opportunity Specialist and the KSC Discrimination Complaint Manager are certified to provide EEO counseling, although this was not specifically stated in the email. (*Id.*) It appears from the record that Jarvis failed to contact either of these individuals before filing the formal complaints with NASA headquarters.

---

[5] Prior to February of 2005, NASA designated certain individuals as "Collateral Duty Counselors." (Doc. No. 53-5 at 11-12.) These individuals provided EEO counseling to employees (*Id.*) In 2005, Tara Gillman took over as Manager of the Office of Diversity and Equal Opportunity. (*Id.* at 8.) Gillman discontinued the use of Collateral Duty Counselors and began using certified counselors within the Office of Diversity and Equal Opportunity to provide EEO counseling. (*Id.* at 11-14.) Both Collateral Duty Counselors and the certified counselors within the Office of Diversity and Equal Opportunity are considered to be Equal Opportunity (EO) counselors, and both are qualified to provide EEO counseling.

## Standard of Review

### I. Summary Judgment

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In addition, when a claimant fails to produce "anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

## Analysis

In the Amended Complaint, Jarvis asserts a number of claims arising out of her employment relationship with NASA. (Doc. No. 29.) In Counts I and II, Jarvis alleges violations of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e), including gender discrimination and retaliation. (*Id*.) In Count III, Jarvis brings a claim for retaliation under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8)(A). In Counts IV and V, Jarvis contends that she is entitled to both overtime pay as well as damages for retaliation under the Fair Labor Standards Act, 29 U.S.C. § 201. (*Id*.) Finally, in Count VI, Jarvis alleges that she is entitled to relief under the Back Pay Act, 5 U.S.C. § 5596, because NASA has yet to provide Jarvis with the full relief ordered by the Equal Employment Opportunity Commission (EEOC) in a prior discrimination action. (*Id*.)

Defendant moves for summary judgment on Counts I and II, asserting that Jarvis failed to initiate contract with an Equal Employment Opportunity (EEO) Counselor before filing a formal discrimination complaint with NASA headquarters, thereby failing to exhaust her administrative remedies. (Doc. No. 53.) Defendant further maintains that Plaintiff presents insufficient evidence to support a finding that the alleged failure to exhaust administrative remedies is subject to equitable tolling. (*Id*.) Defendant next moves for summary judgment on Count IV, alleging that

Jarvis was an FLSA exempt employee and therefore not entitled to overtime compensation. (*Id*.) Defendant moves for summary judgment on Count V, maintaining that Jarvis did not complain about an FLSA violation and therefore failed to engage in activity protected under the FLSA. (*Id*.) Finally, Defendant moves for summary judgment on Count VI, contending that the Back Pay Act does not create a cause of action where the underlying claims arise out of a failure to provide a discretionary promotion. (*Id*.)

In addition to the motion for summary judgment, Defendant has also filed a Motion to Dismiss Count III of Plaintiff's Amended Complaint for lack of subject matter jurisdiction. (Doc. No. 59.) In response, Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice of Count III of the Amended Complaint. (Doc. No. 60.)

## I. Exhaustion of Administrative Remedies

Title VII of the Civil Rights Act of 1964 provides "that all personnel actions affecting federal employees and applicants for federal employment shall be made free from any discrimination, based on race, color, religion, sex or national origin," and "establishes an administrative and judicial enforcement system." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829-30 (1976) (internal quotations omitted). A federal employee filing a claim for unlawful employment practices in a district court must, however, first seek relief from the agency where the unlawful acts originated. *Grier v. Sec'y of the Army*, 799 F.2d 721, 724 (11th Cir. 1986). This precondition to filing suit "'is part and parcel of the congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for maintaining nondiscrimination in employment.'" *Id*. (quoting *Kizas v. Webster*, 707 F.2d 524, 544 (D.C. Cir. 1983).

The pre-filing exhaustion requirement does not appear in 42 U.S.C. § 2000. Rather the statute authorizes the EEOC to "issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under the section." 42 U.S.C. § 2000e-16(b). Pursuant to this authority, the EEOC issued a regulation requiring that "[a]ggrieved persons who believe they have been discriminated against . . . consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory . . . ." 29 C.F.R. § 1614.105(a)(1). If informal attempts at resolution are unsuccessful, the Counselor is required to inform the employee, in writing, of the right to file a discrimination complaint. 29 C.F.R. § 1614.105(d). The regulations provide that an employee's failure to initiate contact with a Counselor within 45 days from the date of the discrimination is grounds for dismissal of the complaint, and the employer bears the burden of establishing the employee's failure to make such contact. 29 C.F.R. § 614.107(a)(2); *Brown v. Snow*, 440 F.3d 1259,1265 (11th Cir. 2006). This 45 day time limit is "subject to waiver, estoppel and equitable tolling." 29 C.F.R. § 1614.604(c). Such relief, however, is granted "sparingly" and is appropriate only in situations where a "claimant has been induced or tricked by his adversary's misconduct. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1991).

In this case, Jarvis did in fact seek administrative relief by filing formal complaints with the NASA Headquarters Office of Diversity and Equal Opportunity in November and December of 2007. (Doc. No. 53.) The question now before the Court is whether Jarvis contacted an EEO counselor prior to filing her formal complaints. Jarvis maintains that her September 2007 email to Gillman, in her position as Manager of the Office of Diversity and Equal Opportunity, satisfied

the EEO counselor contact requirement despite the fact that Gillman is not formally designated as an "EEO Counselor." (Doc. No. 61.)

The EEOC has consistently interpreted 29 C.F.R. § 1614.105 so that "a complainant may satisfy the criterion of EEO Counselor contact by initiating contact with *any agency official logically connected with the EEO process*, even if that official is not an EEO counselor, and by exhibiting an intent to begin the EEO process." EEOC Management Directive 110, at ch. 2. § I.A n.1, 1999 WL 33318588 (Nov. 9, 1999) (emphasis added); *see also Osuagwu v. Peake*, EEOC Doc. 0120081307, 2008 WL 2264405, at *1 (E.E.O.C. May 20, 2008) (complaint sufficient where directed to a multitude of high ranking officials including the Director of Veterans Integrated Services Network, the Medical Center Director and a Human Resources Specialists); *Duke v. Slater*, EEOC Doc. 01A02129, 2000 WL 732027, at *1 (E.E.O.C. May 22, 2000) (letter to a Regional Director of the Department of Transportation's Office of Civil Rights qualified as initiating contact); *Kinan v. Cohen*, EEOC Doc. 05990249, 1999 WL 320546, at *2 (E.E.O.C. May 6, 1999) (complaint directed to an Equal Employment Specialist sufficient to initiate contact with an EO counselor).

Both the Eighth and Ninth Circuits have recently deferred to the EEOC interpretation of 29 C.F.R. § 1614.105. *Kraus v. Presidio Trust Facilities Div.*, 572 F.3d 1039 (9th Cir. 2009), *Culpepper v. Schafer*, 548 F.3d 1119 (8th Cir. 2008). In *Culpepper*, an employee of the U.S. Department of Agriculture (USDA) sent letters to the Director of the USDA's Office of Civil Rights. The Eighth Circuit found the Director to be "logically connected with the EEO process" and therefore sufficient to satisfy the requirement of Counselor contact under 29 C.F.R. § 1614.105. *Culpepper*, 548 F.3d at 1122. The Ninth Circuit reached a similar conclusion in *Kraus*,

finding a complaint to an EEO Officer sufficient to satisfy 29 C.F.R. § 1614.105 despite the fact that the officer was not a designated "Counselor." *Kraus*, 572 F.3d at 1045. In reaching this conclusion, the court noted that "[t]he EEOC's pragmatic interpretation of 29 C.F.R. § 1614.105 comports with the goal of encouraging informal settlement without imposing an unduly rigid or formalistic procedural hurdle on injured employees seeking redress." *Id.*

Gillman, as Manager of the Office of Diversity and Equal Opportunity, is an agency official logically connected with the EEO process. In her position, Gillman made the decision to stop using Collateral Duty Counselors and replaced them with Certified Counselors in the EO office. Gillman also implemented a variety of measures to inform KSC employees of the change. Gillman, in her position as Manager of the Office of Diversity and Equal Opportunity, is logically connected to the EEO process, as she clearly exerts a considerable amount of control over the process itself. As such, Gillman qualifies as a "counselor" within the meaning of 29 C.F.R. § 1614.105.

To satisfy the requirements of 29 C.F.R. § 1614.105, the employee's complaints must also "exhibit an intent to start the EEO process." EEOC Management Directive 110, at ch. 2 § I.A n. 1; *Allen v. Runyon*, EEOC Doc. 01952557, 1996 WL 391224, at *3 (E.E.O.C. July 8, 1996). The EEOC has found intent to be lacking where the complainant merely invokes federal anti-discrimination law or expressly declines to file a complaint. *Conner v. Harvey*, EEOC Doc. 01A60149, 2006 WL 3256374 (E.E.O.C. May 17, 2006). In other instances, the EEOC has found intent to be lacking where, on the face of the letter "it would not be simple to conclude that the complainant should be referred to an EEO counselor." *Klugel v. Small*, EEOC Doc. 0120064105, 2006 WL 3473823, at *2 (E.E.O.C. Nov. 21, 2006).

In the present case, the August 17, 2007 email informed Gillman that Jarvis felt she was being subjected to retaliation and included a request "that such retaliation immediately cease." (Doc. No. 53-14.) Jarvis maintains that the email was an attempt to initiate the precomplaint process as required under the EEOC regulations, and that she expected Gillam to open a case in response. (Doc. No. 53 ¶ 7.) Gillman apparently also interpreted the email as displaying an intent to initiate the EEO process, as evidenced by her reply email providing Jarvis with information regarding the complaint process. (Doc. No. 53-14.) Considering the facts in the light most favorable to the Plaintiff, the August 17, 2007 email to Gillman established contact with a counselor and exhibited an intent to initiate the EEO process in satisfaction of 29 C.F.R. § 1614.105. Accordingly, Plaintiff exhausted her administrative remedies prior to filing a formal complaint with NASA Headquarters, and Defendant's motion for summary judgment on Counts I and II must be denied. [6]

## II. Fair Labor Standards Act

The FLSA establishes minimum labor standards in order to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The statute "guarantee[s] compensation for all work or employment engaged in by employees covered by the Act." *Tenn. Coal, Iron & R.*

---

[6] Jarvis argues that if the Court should find that she did not properly initiate contact with a Counselor within 45 days, the time limitation should nonetheless be subject to equitable tolling. Because the Defendant's motion for summary judgment on Counts I and II will be denied on other grounds, the Court will not reach the issue of equitable tolling at this time.

*Co. v. Muscoda*, 321 U.S. 590 (1944).  Under the FLSA, subject employers must pay their employees one and one-half times the employee's usual hourly wage for all hours worked in excess of forty hours per week.  29 U.S.C. § 207(a)(1).  The statute exempts from such overtime coverage, "any employee employed in a bona fide executive, administrative or professional capacity."  29 U.S.C. § 213(a)(1).  The employer bears the burden to prove that a particular exemption applies by "clear and affirmative evidence," and such exemptions are to be construed narrowly against the employer.  *Birdwell v. City of Gadsden*, 970 F.2d 802, 805 (11th Cir. 1992); *see also Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004) (citing *Atlanta Prof'l Firefighters Union v. City of Atlanta*, 920 F.2d 800, 804 (11th Cir. 1991)).

The FLSA does not specifically define the administrative exception; rather the Act gives the Secretary of Labor "broad authority" to define and limit the scope of exemptions in promulgated regulations.  *Auer v. Robbins*, 519 U.S. 452, 456 (1997).  The regulations defining the administrative exemptions are set out in 29 C.F.R. § 541.200 *et seq.*  Under these regulations, the administrative exemption applies only where the employee: (1) is compensated on a salary basis of not less than $455 per week; (2) primarily performs office or non-manual work directly related to the management or general business operations of the employer or employer's customers; and (3) exercises discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a).

### a. Salary Basis Test

The first prong of the three-part test for the administrative exemption is referred to as the "salary basis test."  *Hogan,* 361 F.3d at 625.  The salary basis test is satisfied where "the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount

constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in quality or quantity of work performed." 29 C.F.R. § 541.602(a).

It is undisputed that Jarvis is a GS-13 employee, officially classified by NASA as FLSA exempt.[7] Jarvis's earning statements from 2006 and 2007 show an annual salary divided into equal biweekly payments greater than $455 per week. (Doc. No. 53-23). The earning statements additionally demonstrate that Jarvis received her hourly rate for 80 hours in each biweekly paycheck. (*Id*.) There is no evidence presented suggesting that Jarvis was ever paid less than her hourly rate for 80 hours or that such an amount was ever reduced because of the quality or quantity of her work. The only evidence provided supporting a conclusion that Jarvis is not paid on a salary basis is her own testimony, wherein she simply states that she "gets hourly pay." (Jarvis Dep. at 204.) Furthermore, the summary judgment record provides no evidence that the amount Jarvis was paid per week was ever changed as result of actual hours worked or subject to any deductions. As such, no reasonable finder of fact could concluded that Jarvis was not paid on a salary basis.

### b. Primary Duty Test

The second part of the three-part test for the administrative exemption is referred to as the "primary duty test." According to the relevant regulations, this test is satisfied where the "employee's primary duty [is] the performance of work directly related to the management or general business operations of the employer or employer's customers." 29 C.F.R. § 541.201(a).

---

[7] It is undisputed that Jarvis has never challenged her job title or her classification as FLSA exempt. However, "[a] job title alone is insufficient to establish the exempt status of an employee." 29 C.F.R. § 541.2.

Work directly related to management or general business operations includes work in functional areas such as accounting, auditing, quality control, and regulatory compliance. 29 C.F.R. § 541.201. "Primary duty" is defined as the "principal, main, major or most important duty that the employee performs," and "must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700. The primary duty test therefore turns on the day-to-day activities of the employee, rather than job descriptions, resumes, or performance evaluations. *Paul v. UPMC Health Sys.*, 2009 WL 699943, at *10 (W.D. Pa. March 10, 2009) (citing *Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 400 (6th Cir. 2004)).

It is undisputed that Jarvis holds four titles at NASA, including: KSC Industrial Property Officer, KSC Property Administrator, Lead of the KSC Industrial Property Office and Industrial Property Management Specialist. (Jarvis Dep. at 22.) As Industrial Property Management Specialist, Jarvis performs day-to-day property administration work, processes transfers of property, and investigates losses. (*Id.* at 22-24.) As a Property Administrator, Jarvis audits contractors with contractor-accountable government property, signs transfers of property, and relieves contractors from liability resulting from loss, damage, and destruction of government property. (*Id.* at 24, 25.) As Industrial Property Officer, Jarvis serves as the "focal point" for all contracts with contractor-accountable government property at KSC and is also involved in planning such contracts. (*Id.* at 25, 26.) Finally, as Lead of the Industrial Property Office, Jarvis directs activities of a trainee, interprets Federal Acquisition Regulations, and offers advice regarding compliance with these regulations. (*Id.* at 26-28.)

Defendant contends that Jarvis meets the "duties test" because her employment responsibilities include several of the functions specifically mentioned in the regulations, including auditing, quality control, and regulatory compliance, responsibilities which are supported by the summary judgment record in this case. Plaintiff does not respond to Defendant's arguments with respect to the primary duty test and does not dispute any of the above facts regarding her duties at NASA. Instead, Plaintiff relies solely on a footnote in a previously decided order denying a motion for summary judgment on the FLSA exemption, an order decided in the early stages of discovery when the record contained minimal information regarding Jarvis's duties at NASA. (Doc. No. 61) The evidence now in the record, even when construed in a light most favorable to Jarvis, establishes that the primary duty of her position was directly related to NASA's general business operations.

### c. Discretion and Independent Judgment

The third and final part of the three-part test for the administrative exemption is referred to as the "discretion and independent judgment test." For this test to be met, "an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a). Employees may still exercise discretion and independent judgment "even if their decisions or recommendations are reviewed at a higher level." *Id*. An employee does not, however, exercise discretion and independent judgment by merely performing "clerical or secretarial work, recording or tabulating data or performing other mechanical, repetitive, recurrent routine work." 29 C.F.R. § 541.202(e). The exercise of discretion and independent judgment "must be more than the use of skill in applying well-established techniques,

procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(c).

Exemptions are not available for employees who simply apply such well established techniques or

procedures within "closely prescribed limits to determine the correct response to an inquiry or set

of circumstances." 29 C.F.R. § 704.

The regulations provide a non-exhaustive list of factors to considered when evaluating

whether an employee exercises discretion and independent judgement with respect to matters of

significance. The regulations provide in pertinent part:

> Factors to be considered . . . include, but are not limited to: whether the employee
> has authority to formulate, affect, interpret, or implement management policies or
> operating practices; . . . whether the employee has authority to commit the employer
> in matters that have significant financial impact; . . . whether the employee provides
> consultation or expert advice to management . . . .

29 C.F.R. § 541.202(b).[8]

Although Plaintiff attempts to portray herself as a secretarial employee, the undisputed

record demonstrates that Plaintiff commits NASA in matters of significant financial impact,

provides expert advice to management, and implements operating polices. Jarvis has the authority

to sign transfers of government property and relieve contractors from liability for loss, damage,

and destruction of government property. (Jarvis Dep. at 25.) Jarvis is the "focal point" for all

contracts involving contractor-accountable government property at KSC and serves as the interface

---

[8] Defendant relies on *Hogan* to define the requirements of the administrative exemption as
consisting solely of the "salary test" and the "duty test." *Hogan v. Allstate Ins. Co.*, 361 F.3d 621,
625 (11th Cir. 2004). While *Hogan* was decided prior to the latest amendments to the administrative
exemption requirements set forth in 29 C.F.R. § 541.200 *et seq.*, Defendant does rely on the current
version of 29 C.F.R. § 541.202 which defines the factors relevant to the discretion and independent
judgment analysis.

between NASA Procurement, the Office of the Inspector General, and the Department of Commerce and Consumer Affairs. (*Id.*) Jarvis is also involved in planning contracts. (*Id.* at 26.) As an honorary representative on the Source Evaluation Board, Jarvis provides advice to board members regarding the rules and regulations of Government Property Management, property clauses, and solicitation provisions. (*Id.*) Furthermore, Jarvis has the authority to determine how KSC implements amendments to the Federal Acquisition Regulations. (*Id.* at 35.)

Plaintiff does not dispute the above mentioned employment duties and fails to respond to Defendant's arguments regarding discretion and independent judgment. Under these circumstances, the Court concludes that Defendant has met its burden of establishing that Jarvis exercises discretion and independent judgment in her positions at NASA.

In sum, Defendant has met its burden with respect to all three elements of the administrative exemption, and Plaintiff has failed to create a genuine issue of material fact regarding any one of these elements. Accordingly, the Court concludes that Jarvis is properly classified as an exempt administrative employee. Defendant's motion for summary judgment on Count IV and Count V will be granted.

## III. Back Pay Act Claim

The purpose of the Back Pay Act is to "put an employee who was the victim of an unjustified or unwarranted personnel action in the same position as he would have been had the

erroneous action not occurred." *Wells v. Fed. Aviation Admin.*, 755 F.2d 804, 807 (11th Cir. 1985).

The Act provides in pertinent part:

> An employee of an agency, who on the basis of a timely appeal or an administrative determination is found by appropriate authority under applicable law, rule, regulation or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances or differentials of the employee-
>> (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect
>>> (I) an amount equal to all or any part of the pay, allowances or differentials, as applicable which the employee normally would have earned or received . . .
>>> (ii) reasonable attorney fees related to the personnel action . . . .

5 U.S.C. § 5596(b)(1). An employee "is entitled to be made whole whenever an erroneous personnel action which has terminated or reduced his compensation is corrected by appropriate authority." *Id.* (citing S.Rep. No. 1062, 89th Cong., 2d Sess. 1, *reprinted in* 1966 U.S. Code Cong. & Ad.News 2097).

In *United States v. Testan*, 424 U.S. 392 (1976), the Supreme Court found that relief under the Back Pay Act is only available to compensate for a reduction in pay or a decrease in grade. "[T]he Back Pay Act, as its words so clearly indicate, was intended to grant a monetary cause of action only to those who were subjected to a reduction in their duly appointed emoluments or position." *Id.* at 407. Accordingly, the Court found that the complainant who "had been denied a promotion on improper grounds" was not entitled to relief. *Id.* at 406. Other courts have similarly found that claims regarding wrongful denials of promotions fall outside the purview of the Back Pay Act. *See Donovan v. United States*, 580 F.2d 1203, 1207-08 (3rd Cir. 1978) (Back Pay Act

does not provide recovery for an unwarranted failure to timely promote plaintiff where the action did not cause plaintiff to suffer a reduction in grade); *Favors v. Ruckelshaus*, 569 F. Supp. 363 (N.D. Ga. 1983) (finding the alleged failure to promote plaintiff in a timely manner did not implicate the Back Pay Act where plaintiff was not subject to a decrease in compensation).

Following the Supreme Court decision in *Testan*, Congress enacted the Civil Service Reform Act of 1978, amending the Back Pay Act to specifically include the "failure to confer a benefit" within in the definition of personnel action. Pub.L. No. 95-454, § 702, 92 Stat. 1111, 1216 (1978) (codified at 5 U.S.C. § 5596(b)(4)). The amendment also provided that the reclassification actions at issued in *Testan* were outside the scope of the Back Pay Act. (*Id.*) In light of these amendments, the D.C. Circuit reasoned that the Back Pay Act now provides relief for a failure to promote an employee only "if an upgrade is mandatory once specified conditions are met." *Brown v. Mitchell,* 918 F.2d 214, 220 (D.C. Cir. 1990). However, where "an upgrade is not of that virtually automatic, noncompetitive kind, the Act affords no relief." *Id.* Only where an upgrade is mandatory will the "the failure to confer the benefit constitute a withdrawal or reduction in compensation" as required by the Act. *Id.* Thus, failure to confer a discretionary promotion falls outside the purview of the Back Pay Act.[9]

---

[9]While the Eleventh Circuit has not expressly addressed the application of the Back Pay Act to discretionary promotions, there is no indication that the Eleventh Circuit would choose not to follow *Brown*, particularly since the Eleventh Circuit has come to a similar conclusion regarding the distinction between discretionary and nondiscretionary overtime pay. *Wells v. Federal Aviation Admin.*, 755 F.2d 804 (11th Cir. 1985). In *Wells*, the Eleventh Circuit held that the loss of discretionary overtime compensation did not constitute a pay a loss and therefore was outside the scope of the Back Pay Act. *Id.*

In the present case, the EEOC determined that Jarvis was wrongfully denied a promotion on the basis of sexual discrimination, ordering NASA to retroactively promote Jarvis to the position in question and to award back pay and other benefits, including reasonable attorney's fees and costs. Jarvis alleges that NASA has not fully complied with the EEOC order, having yet to award appropriate sick leave, annual leave, additions to her savings plan, and interest on her back pay. Even if the Plaintiff's allegations are true, all of the remedies in dispute are derived from the EEOC finding that NASA wrongfully failed to award Plaintiff a discretionary promotion.[10] The promotion to Industrial Property Management Specialist was not virtually automatic or mandatory, such that Plaintiff had "a right to the promotion[] at the time [it] w[as] denied. *Brown*, 918 F.2d at 220. Instead, the promotion at issue was discretionary, as evidenced by the EEOC decision which relied on NASA's failure to consider performance, past experience, and education to support a finding that the non-selection of Jarvis was motivated by gender. The existence of such necessary considerations forecloses the possibility of characterizing the promotion as mandatory. Since the wrongful failure to promote Plaintiff was therefore discretionary, she did not suffer a personnel action resulting in the withdrawal or reduction of compensation, and therefore she is not entitled to relief in Count VI of the Complaint under the Back Pay Act.

---

[10]Plaintiff cites several Merit Systems Protection Board decisions for the proposition that under the Back Pay Act, an employee is entitled to restoration of annual leave balances and appropriate deposits in thrift savings plans. All of the decisions relied on by Plaintiff, however, involve the granting of such relief where the employee was originally subject to a withdrawal or reduction in compensation. *See e.g., Bullock v. Dept. of Air Force*, 80 M.S.P.R. 361 (M.S.P.B. 1998) (employee wrongfully subject to a three day suspension, and board ordered reinstatement in former position). None of the cited decisions supports the proposition that an employee is entitled to such remedies where the employee was not subject to an actual withdrawal or reduction in compensation, but instead was subject to a failure to receive a discretionary promotion.

## IV. Federal Whistleblower Protection Act

Defendant seeks to dismiss Plaintiff's claim under the Federal Whistleblower Protection Act (Count III) for lack of subject matter jurisdiction. (Doc. No. 59.) In response, Plaintiff filed a Notice of Voluntary Dismissal of Count III without prejudice. (Doc. No. 60.)

Under the Whistleblower Protection Act (WPA), the district court has proper subject matter jurisdiction in "mixed cases." 5 U.S.C. § 7512. A mixed case is a case involving a WPA claim as well as an adverse employment action or discrimination claim. *Id.* However, for purposes of 5 U.S.C. § 7512, a case is considered to be a mixed case only where "the action appealed is a removal, suspension for more than 14 days, a reduction in grade, a reduction in pay, or a furlough of 30 days." *Id.* In the absence of one of the enumerated adverse actions, the case is not a "mixed case", and the district court does not have jurisdiction. *Greenhouse v. Geren*, 574 F. Supp. 2d 67 (D.C. Cir. 2008) (citing *Cruz v. Dep't of the Navy*, 934 F.2d 1240 (Fed. Cir. 1991).

In this case, Plaintiff was not subjected to one of the five enumerated adverse actions, nor does she seek relief from any such adverse action. (Doc. No. 31.) Instead, Plaintiff claims to have been subjected only to harassing and retaliatory reactions following her disclosure. *Id.* As such, Plaintiff does not have mixed case upon which the Court can base its jurisdiction, and the most appropriate course of action for the Court to take is to dismiss Count III without prejudice so the claim may be brought in a proper venue. Plaintiff does not oppose this action. (Doc. 60, filed Aug. 10, 2009.) Defendant's motion to dismiss Count III must therefore be granted.

### Conclusion

The Motion for Summary Judgment by Michael D. Griffin (Doc. No. 53, filed June 23, 2009) is **GRANTED in part** and **DENIED in part.** The Motion is **GRANTED** to the extent Defendant seeks summary judgment on claims arising out of the Back Pay Act (Count VI) and the Fair Labor Standards Act (Counts IV and V). The Motion is **DENIED** as to Counts I and II. The Motion to Dismiss Plaintiff's Federal Whistleblower Protection Act Claim by Michael D. Griffin (Doc. No. 59, filed Aug. 6, 2009) is **GRANTED without prejudice.**

**DONE** and **ORDERED** in Orlando, Florida on September 21, 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

Unrepresented Parties